IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 13-CR-3782(2)-JLS |
| PLAINTIFF, | ) | 15-CR-0033(1)-JLS |
| | ) | |
| VS. | ) | SAN DIEGO, CA |
| | ) | APRIL 29, 2016 |
| MICHAEL VANNAK KHEM MISIEWICZ, | ) | 10:30 A.M. |
| DEFENDANT. | ) | |


TRANSCRIPT OF STATUS HEARING/SENTENCING PROCEEDINGS

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE




APPEARANCES:

FOR THE GOVERNMENT:   OFFICE OF THE U. S. ATTORNEY
                      BY:  MARK W. PLETCHER, ESQ.
                           PATRICK HOVAKIMIAN, ESQ.
                      880 FRONT STREET, RM. 6293
                      SAN DIEGO, CA  92101

FOR THE DEFENDANT:    LAW OFFICES OF MARK F. ADAMS
                      BY:  MARK F. ADAMS, ESQ.
                      964 FIFTH AVE., SUITE 335
                      SAN DIEGO, CA  92101
                      AND
                      LAW OFFICES OF WENDY S. GERBOTH
                      BY:  WENDY S. GERBOTH, ESQ.
                      964 FIFTH AVE, SUITE 214
                      SAN DIEGO, CA  92101

PROBATION OFFICER:    FRANCISCO J. TORRES

(APPEARANCES CONTINUED ON NEXT PAGE)

(APPEARANCES CONTINUED)

COURT REPORTER:          FRANK J. RANGUS, OCR
                         U. S. COURTHOUSE
                         333 W. BROADWAY, SUITE 420
                         SAN DIEGO, CA  92101
                         (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I N D E X

PROCEEDINGS:                    PAGE

SENTENCE                        32

1          THE DEPUTY CLERK:  NUMBER 12 AND NUMBER 13 ON THE

2    CALENDAR, 13-CR-3782 AND 15-CR-33, UNITED STATES VS. MICHAEL

3    VANNAK KHEM MISIEWICZ, FOR A SENTENCING.

4          MR. ADAMS:  GOOD MORNING, YOUR HONOR.

5          MARK ADAMS AND WENDY GERBOTH ON BEHALF OF MICHAEL

6    MISIEWICZ.  HE IS PRESENT BEFORE THE COURT ON BOND.

7          MR. PLETCHER:  GOOD MORNING, YOUR HONOR.

8          MARK PLETCHER AND PATRICK HOVAKIMIAN FOR THE UNITED

9    STATES.

10          THE COURT:  OKAY.  THANK YOU.

11          THE COURT HAS READ AND CONSIDERED THE FOLLOWING

12   DOCUMENTS FOR SENTENCING THIS MORNING:  THE PRESENTENCE

13   REPORT; THE ADDENDUM TO THE PRESENTENCE REPORT; DEFENDANT'S

14   OBJECTIONS TO THE PRESENTENCE REPORT AND ALL OF THE ATTACHED

15   EXHIBITS TO THAT DOCUMENT; DEFENDANT'S SENTENCING MEMORANDUM

16   AND ATTACHMENTS, WHICH INCLUDE, WHICH ARE EXTENSIVE, WHICH

17   ALSO INCLUDE THE DEFENDANT'S LETTER; DEFENDANT'S SUPPLEMENTAL

18   SENTENCING MEMORANDUM; SENTENCING EXHIBITS ENTITLED FIRST

19   TRANCHE, WHICH WAS EXTENSIVE.  IT INCLUDED AWARDS THAT THE

20   DEFENDANT HAS RECEIVED, FITNESS REPORTS, LETTERS, EXTENSIVE

21   NUMBER OF LETTERS FROM FAMILY, BIOLOGIC, ADOPTED, FRIENDS.

22   THE SECOND TRANCHE OF SENTENCING EXHIBITS, AGAIN, EXTENSIVE

23   LETTERS FROM A VARIETY OF PEOPLE.  THE GOVERNMENT'S SENTENCING

24   MEMORANDUM WITH ATTACHED EXHIBITS, LETTERS AND PHOTO;

25   GOVERNMENT'S SENTENCING MEMORANDUM, AND THE UNDERLYING PLEA

1    AGREEMENT.

2              I THINK I RECEIVED MORE DOCUMENTS IN THIS CASE THAN I

3    HAVE IN MANY OTHERS IN MY YEARS ON THE COURT TO DATE.  I WOULD

4    LIKE EVERYBODY TO KNOW EACH AND EVERY ONE OF THEM HAS BEEN

5    READ.  SOME OF THEM HAVE BEEN READ MORE THAN ONCE.  SO FOR

6    THOSE OF YOU WHO ARE HERE TODAY WHO WROTE A LETTER, IT HAS

7    BEEN READ AND CONSIDERED CAREFULLY.

8              SO WITH THAT, PLEASE GO AHEAD, SIR.

9              MR. ADAMS:  THANK YOU VERY MUCH, YOUR HONOR.

10             I DO WANT TO POINT OUT THAT THERE HAS BEEN A

11   REMARKABLE NUMBER OF LETTERS WRITTEN, AND I APPRECIATE THAT

12   THE COURT HAS READ THEM ALL AND CAREFULLY CONSIDERED THEM ALL.

13   THE NUMBER OF LETTERS AND THE COMMENTS MADE IN THOSE LETTERS

14   SPEAK TO THE EXTRAORDINARY SUPPORT THAT THIS REMARKABLE MAN

15   HAS IN THE COMMUNITY, AND THE FACT THAT SO MANY PEOPLE HAVE

16   TAKEN THE TIME TO COME HERE FROM SUCH GREAT DISTANCES AND BE

17   HERE IN COURT THIS MORNING ALSO SPEAKS TO HIS VALUE IN THEIR

18   LIVES.

19             TODAY, WE HAVE FAMILY AND COLLEAGUES AND FRIENDS FROM

20   AS FAR AWAY AS MASSACHUSETTS, WISCONSIN, FLORIDA, TEXAS,

21   DELAWARE, ILLINOIS.  I WOULD LOVE TO INTRODUCE THEM ALL, BUT

22   THAT PROCESS ALONE WOULD TAKE SO MUCH TIME.  BUT THESE ARE HIS

23   CLOSEST FAMILY AND FRIENDS AND COLLEAGUES, AND THEY ARE

24   SHOWING THEIR SUPPORT NOT ONLY BY WRITING LETTERS, BUT ALSO BY

25   COMING HERE TODAY.

1          ALL OF THESE PEOPLE KNOW WHAT MICHAEL MISIEWICZ DID.

2     THEY UNDERSTAND THE GRAVITY OF THE HARM HE CAUSED.  THEY HAVE

3     TALKED WITH HIM ABOUT HIS DECISIONS THAT LEADS HIM HERE TODAY.

4     THEY REMAIN SUPPORTIVE.  THEY'RE HERE TO SHOW THAT SUPPORT.

5     SOME HAVE FORGIVEN HIM; OTHERS ARE WORKING ON THE PROCESS OF

6     FORGIVING HIM FOR THE DECISIONS AND THE MISTAKES THAT HE MADE.

7          THERE'S SIMPLY NO EXCUSE FOR TAKING THINGS OF VALUE

8     FROM LEONARD FRANCIS.  THE DAY MICHAEL MISIEWICZ FIRST TOOK

9     ANYTHING OF VALUE, HE RENDERED HIMSELF COMPROMISED AND,

10    FRANKLY, UNABLE TO OBJECTIVELY DISCHARGE HIS GREAT

11    RESPONSIBILITIES, AND HE BROKE THE LAW.  ANY GDMA PORT

12    DECISIONS HE WAS INVOLVED WITH GOING FORWARD WERE TAINTED,

13    WHETHER OR NOT THE NAVY'S MISSION WAS BENEFITED.  THE DAY HE

14    PROVIDED SCHEDULES OF SHIP PORT VISITS TO LEONARD FRANCIS, HE

15    BROKE THE LAW.  HE EXERCISED AUTHORITY THAT HE DID NOT HAVE,

16    AND FOR THESE CRIMES HE MUST BE PUNISHED.

17          WE ARE CONVINCED, AND WE'VE TRIED TO CONVINCE YOUR

18    HONOR WITH OUR FILINGS, THAT 41 MONTHS IN PRISON IS THE RIGHT,

19    JUST, AND FAIR SENTENCE ON ALL SIDES.  WITH THAT SENTENCE, HE

20    WILL SERVE AN ACTUAL THREE YEARS IN PRISON, WHICH IS A LONG,

21    LONG TIME, AND WHEN HE COMES OUT THE OTHER SIDE, HE WILL

22    LIKELY HAVE NOTHING.

23          HIS FALL FROM THE HIGHEST REACHES OF THE NAVY HAS

24    BEEN MUCH LIKE HIS CAREER, EXTRAORDINARY.  MICHAEL MISIEWICZ

25    AND HIS FAMILY WILL NEVER BE THE SAME.  NO MATTER THE SENTENCE

1   AND THE RESTITUTION THAT IS ORDERED, HIS DEBT TO THE NAVY AND

2   HIS DEBT TO THE UNITED STATES WILL NEVER BE FULLY PAID.  WHAT

3   HE DID AND THE FATE HE SUFFERS WILL BE FOREVER IN THE PUBLIC

4   EYE AND CERTAINLY IN THE NAVY LEXICON.  41 MONTHS IN PRISON IS

5   ENOUGH TO PUNISH, TO DETER, TO SEND A POWERFUL MESSAGE TO ALL

6   THOSE JUNIOR OFFICERS COMING UP IN THE NAVY.

7           THE PROBATION OFFICE CAME TO THE SAME GUIDELINE RANGE

8   CALCULATIONS A SLIGHTLY DIFFERENT WAY THAN THE PARTIES DID,

9   BUT THEY LOOKED AT THE CASE, THEY LOOKED AT THE RELATED CASES,

10  THEY LOOKED AT MICHAEL MISIEWICZ'S HISTORY, HIS

11  CHARACTERISTICS, AND THEY DETERMINED THAT A 3553(A) VARIANCE

12  WAS APPROPRIATE.

13          WE'RE ASKING YOUR HONOR TO VARY A LITTLE MORE THAN

14  PROBATION SUGGESTS SO AS TO AVOID UNWARRANTED DISPARITY IN THE

15  SENTENCES OF OTHERS INVOLVED IN THE CONTRACTING AND OVERSIGHT

16  END OF THIS CASE, LIKE LIEUTENANT COMMANDER MALAKI WHO

17  PROVIDED LEONARD FRANCIS WITH COMPETITOR CONTRACTING

18  INFORMATION WHICH ALLOWED GDMA TO TAKE ADVANTAGE OF THE

19  SYSTEM, WIN THE AWARD OF VIRTUALLY ALL NAVY BUSINESS IN THE

20  7TH FLEET AREA OF RESPONSIBILITY AS RECENTLY AS 2011, THAT

21  ALLOWED HIM TO CREATE FICTITIOUS SUBCONTRACTORS AND REPEATEDLY

22  SUBMIT PHONY INVOICES TO THE GOVERNMENT.  AND IN ADDITION,

23  MALAKI TOOK THINGS OF VALUE.  HE PROVIDED SHIP SCHEDULES OVER

24  THE COURSE OF ALMOST SIX YEARS.  HE PERPETUATED AND AIDED A

25  MASSIVE GDMA FRAUD AND AT ONE POINT EVEN THREATENED A WITNESS

1  AT LEONARD FRANCIS' REQUEST AND HE RECEIVED 40 MONTHS.

2          THE GOVERNMENT WANTS TO PILE ALL OF THE GDMA FRAUD

3  AND THE COST OF FIXING THE NAVY HUSBANDING SERVICE CONTRACTING

4  SYSTEM AND OVERSIGHT ON THE SHOULDERS OF MICHAEL MISIEWICZ.

5  THIS IS NOT FAIR, AND THE EVIDENCE DOES NOT SUPPORT HOLDING

6  HIM TO ACCOUNT FOR THESE OTHER CRIMES AND COSTS.  MICHAEL

7  MISIEWICZ HAD NOTHING TO DO WITH THE PERPETUATION OF THE

8  FRAUD.  INDEED, HE DID NOT EVEN KNOW OF THE FRAUD, AND MY VIEW

9  IS THAT EVERYTHING IN HIS HISTORY AND BACKGROUND SUGGESTS

10  THAT, HAD HE KNOWN OF THE FRAUD, HE WOULD HAVE SPOKEN UP,

11  DESPITE HIS PARTICIPATION IN THIS BRIBERY CONSPIRACY WITH

12  LEONARD FRANCIS.

13          THE NAVY'S HUSBANDING CONTRACTING PROBLEMS, WHICH

14  EXISTED FOR DECADES, LITERALLY, IN EVERY THEATER OF

15  ENGAGEMENT, HAVE NOW, WITH CONGRESSIONAL OVERSIGHT AND

16  INVOLVEMENT OF TOP NAVY OFFICIALS, BEEN ADDRESSED, AND WE

17  SUBMITTED EXHIBITS TO YOUR HONOR ALONG THOSE LINES.

18          IT IS UNFAIR TO HOLD MICHAEL MISIEWICZ ACCOUNTABLE

19  FOR A BROKEN CONTRACTING SYSTEM THAT AWARDED ALL OF THOSE

20  HUSBANDING PORT CONTRACTS IN THE 7TH FLEET AREA OF

21  RESPONSIBILITY TO GDMA WITH LAX OVERSIGHT, WHICH ALLOWED THOSE

22  FRAUDULENT CONTRACTS AND INVOICES TO BE REPEATEDLY SUBMITTED

23  FOR PAYMENT.

24          THE GOVERNMENT'S ATTEMPT TO ALSO MAKE THE CASE THAT

25  MICHAEL MISIEWICZ CONCOCTED FACIALLY PLAUSIBLE JUSTIFICATIONS

1    OR NOW ATTEMPTS TO RATIONALIZE GDMA-INVOLVED DECISIONS AFTER

2    THE FACT IGNORES THE OBJECTIVE FACT THAT MICHAEL MISIEWICZ'S

3    STRATEGIC DECISIONS, INCLUDING THOSE AFFECTING GDMA, WERE

4    FAVORABLE TO THE NAVY AND OBJECTIVELY RECOGNIZED AS SUCH IN

5    REAL TIME BY HIS SUPERIORS IN AWARDING THE LEGION OF MERIT.

6        THERE IS A CONSISTENT PATTERN THROUGHOUT MICHAEL

7    MISIEWICZ'S CAREER TO MAKE STRATEGIC DECISIONS BASED ON

8    MISSION OBJECTIVES AND THEATER CONCERNS, TO PUT THE NAVY AND

9    THE NATION'S INTERESTS FIRST, ABOVE ALL OTHERS.  OF COURSE,

10   ALL OF THAT IS FOREVER TAINTED AND THE LEGACY THAT HE CREATED

11   AND BUILT IS FOREVER LOST BY HIS DECISION TO ACCEPT BRIBES

12   FROM LEONARD FRANCIS AND TAKE ACTIONS WHICH BENEFITED GDMA.

13       MICHAEL MISIEWICZ HAS BEEN DESCRIBED IN SOME OF THE

14   LETTERS AS TOO SMART FOR HIS OWN GOOD, UNABLE TO EXERCISE

15   COMMON SENSE AND FOLLOW HIS MORAL COMPASS.  HE LOST HIS WIFE.

16   HE ALLOWED HIMSELF TO BE BRIBED, AND HE HIMSELF ASKED FOR

17   THINGS OF VALUE FROM LEONARD FRANCIS, AND HE ALONE IS

18   RESPONSIBLE.  HIS LIFE IS RUINED.  HE WILL NEVER BE THE SAME.

19       HAVING STUDIED THIS MAN AND HIS HISTORY FOR OVER A

20   YEAR NOW, IT'S PAINFULLY OBVIOUS TO ME THAT WHAT WE SEE HERE

21   IS A HEARTBREAKING TRAGEDY FOR WHICH MICHAEL MISIEWICZ IS

22   PROFOUNDLY SORRY AND ASHAMED.  41 MONTHS IN A PRISON CELL FOR

23   THIS MAN, WITH HIS BACKGROUND AND HIS HISTORY AND HIS HEALTH

24   ISSUES, IS SUFFICIENT.  ANYTHING MORE, IN OUR VIEW, IS GREATER

25   THAN NECESSARY.

1          THANK YOU, YOUR HONOR.

2          THE COURT:  OKAY.  THANK YOU, MR. ADAMS.

3          MR. MISIEWICZ, IS THERE ANYTHING YOU WOULD LIKE TO

4  SAY, SIR, THIS MORNING BEFORE SENTENCING?  YOU HAVE THAT

5  OPPORTUNITY IF YOU'D LIKE.

6          MR. MISIEWICZ:  THANK YOU, YOUR HONOR, FOR THE

7  OPPORTUNITY TO SPEAK.  I'VE EXPRESSED WHAT I WANT TO SAY IN

8  THE LETTER TO THE COURT AND THROUGH THE EXHIBITS, EXTENSIVE

9  EXHIBITS, AND THE MEMOS FILED BY MY LAWYERS.

10          WITH THAT SAID, YOUR HONOR, I WANT TO SAY I'M SORRY

11  TO YOU.  I'M SORRY TO ALL THAT HAVE BEEN INVOLVED IN THIS CASE

12  FOR THE EXPENDITURE OF TIME AND RESOURCES BECAUSE OF MY

13  CRIMINAL ACTIVITY.  I TAKE FULL RESPONSIBILITY FOR THE

14  RECKLESS BEHAVIOR THAT I EXECUTED, AND I STAND READY TO SERVE

15  ANY SENTENCING THE COURT DIRECTS.

16          IF I MAY, YOUR HONOR, I'D LIKE TO ADDRESS MY

17  FAMILY --

18          THE COURT:  CERTAINLY.

19          MR. MISIEWICZ:  -- AND FRIENDS.

20          MOM, I'M SORRY.  I'M SORRY FOR LETTING YOU DOWN.  I

21  NEVER INTENDED TO DO THIS AND I NEVER MEANT THE HARM.

22          I WANT TO THANK ALL MY FAMILY AND FRIENDS AND

23  SHIPMATES FOR BEING HERE TODAY.  I LOVE OUR COUNTRY, I LOVE MY

24  NAVY, AND I NEVER MEANT ANY OF THIS.  I'M SORRY.

25          YOUR HONOR, THANK YOU FOR THE EXTRA TIME, AND THAT'S

1    ALL I HAVE.

2            THE COURT:  OKAY.  THANK YOU, SIR.  I APPRECIATE YOUR

3    COMMENTS.

4            MR. ADAMS:  THANK YOU, YOUR HONOR.

5            THE COURT:  YES.  THANK YOU.

6            OKAY.  MR. PLETCHER, PLEASE GO AHEAD, SIR.

7            MR. PLETCHER:  THANK YOU, YOUR HONOR.

8            ALL HAIL.  YOUR HONOR, IN THIS CASE, THE UNITED

9    STATES IS RECOMMENDING A SENTENCE OF 78 MONTHS, IN THE MIDDLE

10   OF THE GUIDELINE RANGE THAT THE PARTIES AGREE UPON.  THAT

11   SENTENCE IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO

12   ACHIEVE ALL THE PURPOSES OF SENTENCING.

13           AND BEFORE I BEGIN, I WANT TO COMMENT ON MR. ADAMS'

14   AND MR. MISIEWICZ'S PRESENTATION, WHICH WAS DECIDEDLY

15   DIFFERENT IN TONE AND IN CONTENT THAN THE THINGS THAT WERE

16   WRITTEN IN THEIR PAPERS AND EXPRESSED A GOOD DEAL MORE

17   COMPLETE ACCEPTANCE OF RESPONSIBILITY AND CONTRITION THAN I

18   HAD UNDERSTOOD COMING INTO THE HEARING TODAY.

19           THE SALIENT DIFFERENCES BETWEEN THIS CASE, YOUR

20   HONOR, WARRANT THE UNITED STATES' RECOMMENDATION OF A SENTENCE

21   15 MONTHS HIGHER THAN THE NEXT-HIGHEST SENTENCE ALREADY

22   IMPOSED IN THIS CASE.  THAT WAS THE SENTENCE THAT THE COURT

23   IMPOSED ON ALEX WISIDIGAMA PREVIOUSLY.  IT WARRANTS THE

24   ADDITIONAL 30-PLUS MONTHS THAN WAS IMPOSED ON CAPTAIN DUSEK

25   DURING OUR LAST SENTENCE, AND IT CERTAINLY, CERTAINLY WARRANTS

1    THE ADDITIONAL SENTENCE THAN WAS IMPOSED ON LESSER OFFICERS,

2    LIEUTENANT COMMANDER MALAKI AND ENLISTED LS1 DAN LAYUG.

3         YOUR HONOR, AS WE HIGHLIGHTED IN OUR SENTENCING

4    MEMORANDUM, THE COURT IS AT A SIGNIFICANT DISADVANTAGE IN THIS

5    CASE BECAUSE THIS CASE PLED GUILTY.  THERE'S AN AGREED-UPON

6    STATEMENT OF FACTS, BUT THE COURT DIDN'T SIT THROUGH AN

7    EIGHT-WEEK TRIAL.  IT DIDN'T RECEIVE 500 OR A THOUSAND

8    EXHIBITS INTO EVIDENCE.  IT DOESN'T HAVE THE CONTEXT AND

9    CIRCUMSTANCES OF THIS OFFENSE, AND SO WE ARE LEFT DURING

10   SENTENCING TO DO OUR BEST AT ACCOMPLISHING THAT HERCULEAN

11   TASK.

12        AS DAN DUSEK WAS LEAVING HIS POSITION AS DEPUTY N3 OF

13   THE 7TH FLEET, COMMANDER MISIEWICZ WAS TAPPED TO TAKE OVER,

14   AND LEONARD FRANCIS, PRIMARILY THROUGH ONE OF HIS COUNTRY

15   MANAGERS IN JAPAN, ED ARUFFO, SET OUT TO EXPLORE WHETHER

16   COMMANDER MISIEWICZ WOULD BE WILLING TO STEP INTO THE ROLE

17   THAT DAN DUSEK HAD PROVIDED TO GDMA BEFORE HIM.

18        THE CONTEMPORANEOUS E-MAILS ARE SET OUT IN OUR

19   PAPERS.  MOST TELLING, "SO WE ARE CHANGING FACES BUT KEEPING

20   LINES OF COMMUNICATION WITH THE 7TH FLEET."  AND SO WAS THE

21   FIRST OFFER OF A THING OF VALUE, TICKETS TO *THE LION KING* FOR

22   HIM AND HIS FAMILY.  AND THEN THE CONSPIRACY CONTINUED,

23   INCREASINGLY LAVISH AND PRURIENT THINGS OF VALUE, SPIRALLING,

24   FRANKLY, OUT OF CONTROL, ATTRIBUTABLE TO WHATEVER REASON:

25   WORK, TEMPO, HIS PENDING DIVORCE, OR OTHER FACTORS.

1        COMMANDER MISIEWICZ'S BEHAVIOR WHEN BEING OFFERED

2   THESE LUXURIOUS THINGS OF VALUE WAS HEDONISTICALLY

3   UNRESTRAINED.  WE SUBMITTED JUST ONE EXAMPLE, YOUR HONOR, THE

4   VALENTINE'S DAY PARTY IN MANILA, FIGHT NIGHT, AND THE PICTURE,

5   I THINK, DOES MORE THAN I COULD EVER SAY ABOUT THAT EVENT.

6        THE NEXT MONTH, LEONARD FRANCIS WAS IN THE PROCESS OF

7   SETTING UP FOUR PROSTITUTES OVER THE COURSE OF THREE DAYS FOR

8   COMMANDER MISIEWICZ AND FRIENDS IN SINGAPORE, ONLY INTERRUPTED

9   BY THE TSUNAMI IN JAPAN.  I'M REMINDED OF THE ADAGE OF A

10  BUTTERFLY FLUTTERING ITS WINGS.

11       COMMANDER MISIEWICZ WILLINGLY AGREED TO ACCEPT THIS

12  LAVISH AND LURID LIFESTYLE THAT GDMA OFFERED, NOT JUST

13  WILLINGLY ACCEPT, BUT, AS TIME WENT ON, TO ASK FOR AND TO

14  DEMAND A HOTEL IN THIS PORT, PROSTITUTES IN THIS PORT, TRAVEL

15  FOR HIS FAMILY AGAIN AND AGAIN AND AGAIN.  AND ULTIMATELY, AS

16  THE DOCUMENTS PROVIDE, GDMA WAS ABLE TO HOOK HIM ON SOMETHING,

17  MOSTLY TRAVEL AND ENTERTAINMENT, AND AT THAT POINT LEONARD

18  FRANCIS AND ED ARUFFO BEGAN TO INCULCATE COMMANDER MISIEWICZ

19  WITH GDMA'S BUSINESS PLAN.  HE HAD WILLINGLY ACCEPTED THESE

20  THINGS OF VALUE AND NOW IT WAS TIME TO GO TO WORK.

21       IT WAS CENTERED, AS ALWAYS, AS THE COURT HAS HEARD *AD*

22  *NAUSEAM*, ON THE DIRECTIONALITY OF AIRCRAFT CARRIERS INTO

23  PARTICULAR PORTS.  BIG DECKS, AIRCRAFT CARRIERS, CBN'S, ALL

24  TERMINOLOGY FOR THE SAME THING.  DIRECT THESE LUCRATIVE PORT

25  VISITS TO OUR PEARL PORTS:  PORT KLANG CRUISE CENTER, PKCC,

1    SEPANGAR, ANYWHERE IN THAILAND, TO THE PLACES WHERE GDMA WAS

2    PERPETRATING PERVASIVE FRAUD ON THE U. S. NAVY.

3         AND IN BETWEEN THESE THINGS, VACATION TRAVEL WAS

4    LAYERED IN.  THE JUNE 24TH, 2011, TRIP TO KUALA LUMPUR IN

5    CAMBODIA, INCLUDING AN ENVELOPE STUFFED WITH CASH FOR

6    WALKING-AROUND MONEY, ALL COURTESY OF GDMA.

7         AND ABOUT THAT TIME, YOUR HONOR, THE FLOODGATES

8    OPENED, AND MR. MISIEWICZ BEGAN, IN EFFECT, WORKING FOR GDMA

9    WITHIN THE 7TH FLEET.  AND THAT'S A CHARACTERIZATION THAT

10   COMMANDER MISIEWICZ DOES NOT AGREE WITH, AND I THINK THE

11   RECORD WILL SPEAK FOR ITSELF ON THIS OCCASION.  THERE ARE,

12   LITERALLY, THOUSANDS, MAYBE UP, MAYBE UP TO 5,000 OR MORE,

13   COMMUNICATIONS BETWEEN LEONARD FRANCIS OR HIS STAFF AT GDMA

14   AND COMMANDER MISIEWICZ, TEXT MESSAGES, WHATSAPP MESSAGES,

15   PERSONAL TELEPHONE CALLS, AND HOW MANY IN-PERSON MEETINGS

16   WHERE ADDITIONAL BUSINESS AND PRIORITIES WERE DISCUSSED OVER

17   THE COURSE OF HOURS, PUNCTUATED BY ENTERTAINMENT.

18        AND GDMA MARKED THIS MOMENT IN A SERIES OF EMAILS,

19   AND THE COURT'S WELL AWARE OF THEM.  WE GOT THEM.  SMILEY

20   FACE.  ALL HAIL THE GODFATHER.  AND COMMANDER MISIEWICZ BEGAN

21   PASSING CLASSIFIED SHIP SCHEDULES, FULL WELL KNOWING THE RISK

22   INVOLVED.

23        AND I NOTE PARENTHETICALLY, YOUR HONOR, THIS IS NOT

24   THE RISK, AND THIS IS NOT WHAT I UNDERSTAND COMMANDER

25   MISIEWICZ TO BE SAYING TODAY, BUT THIS IS WHAT HE SAID IN HIS

1    SENTENCING LETTER TO THE COURT:  "I HAD NO RIGHT TO DECLARE

2    MYSELF A DECLASSIFICATION AUTHORITY WHEN I SCRUBBED SHIP

3    SCHEDULES AND THEN PASSED ON THE PORT CALL INFORMATION."  THAT

4    IS NOT WHAT HE DID.  HE DID NOT DECLARE HIMSELF A

5    DECLASSIFICATION AUTHORITY.  HE ILLEGALLY PASSED CLASSIFIED

6    INFORMATION TO LEONARD FRANCIS.  THE PHRASEOLOGY OF THIS IS

7    NOT AN APPROPRIATE DESCRIPTION OF WHAT HAPPENED, AND IT DOES

8    NOT CAPTURE THE RISK INVOLVED.

9         THE NEXT SENTENCE, NOR DID HE DO THIS, "I ALSO DID

10   NOT HAVE AUTHORITY TO ASSUME THE RISK I DID WHEN I ILLEGALLY

11   PASSED THAT INFORMATION."  HE DID NOT ASSUME THE RISK.  THE

12   UNITED STATES NAVY AND THE PEOPLE OF THE UNITED STATES ASSUMED

13   THE RISK THAT THAT INFORMATION WOULD GO INTO SOMEONE ELSE'S

14   HANDS.  TO THE EXTENT THAT HE TRUSTED LEONARD FRANCIS, SO BE

15   IT.  WHAT HE CAN'T TRUST IS WHETHER THE CHINESE HAVE HACKED

16   INTO LEONARD FRANCIS' COMPUTERS, WHETHER ANYONE ELSE IN GDMA

17   IS WORKING FOR A HOSTILE FOREIGN NATION STATE OR WORSE.  THE

18   RISK WAS NOT HIS TO ASSUME BECAUSE THERE WAS NO CONSEQUENCE

19   THAT WOULD BEFALL HIM IN THE EVENT THAT THINGS WENT

20   DRAMATICALLY WRONG.

21        HE ALSO STARTED TO FILL GDMA'S BUSINESS PLAN:  BIG

22   DECKS TO PEARL PORTS.  ON THIS POINT, THE DOCUMENTS, THE

23   CONTEMPORANEOUS DOCUMENTS SPEAK FOR THEMSELVES AND PAINT

24   CLEARLY FOR THE COURT A PICTURE OF WHAT WAS GOING ON.  THE

25   DOCUMENTS.  "SEE, YOU ASK, I DELIVER."  THAT'S A *QUID PRO QUO*.

1   THAT'S LANGUAGE OF *QUID PRO QUO* HAVING TO DO WITH INFLUENCING

2   THE MOVEMENT OF SHIPS INTO PARTICULAR PORTS, AND THAT'S A

3   REFRAIN HEARD THROUGHOUT:  YOU ASK, I DELIVER.

4           THAT'S EVIDENCED BY THEIR INCREASINGLY CLOSE

5   RELATIONSHIP AT THIS POINT.  EVERY EMAIL BEGUN OR END WITH

6   BRO, OR LITTLE BRO, LB, BIG BRO, AND EMAIL ACCOUNTS CREATED

7   WITH THE SOLE PURPOSE OF EVADING DETECTION OF LAW ENFORCEMENT,

8   INCORPORATING LEONARD FRANCIS' NAME INTO THE EMAIL ACCOUNT

9   ITSELF.

10          MORE FROM THE DOCUMENTS.  LETTER TO FRANCIS:  "KEEP

11  BIG DECKS AWAY FROM MANILA.  FOCUS ON PKCC, LAEM CHABANG, AND

12  PHUKET."  COMMANDER MISIEWICZ:  "WE'LL TRY TO WORK THE

13  BUSINESS PLAN THIS WEEKEND."  IT'S NOT EVEN YOUR BUSINESS

14  PLAN.  IT'S THE BUSINESS PLAN.  IT'S RATIFIED AND AFFIRMED.

15  "WE'LL TRY TO WORK THE BUSINESS PLAN THIS WEEKEND."

16          NEXT, "I'M FIGHTING HARD, ON GDMA'S BEHALF, TO

17  MAINTAIN THE PORT VISIT OF THE ABRAHAM LINCOLN TO LAEM

18  CHABANG."  AND HE WAS SUCCESSFUL IN THE PHASE OF OPPOSITION,

19  BUT THE USS ABRAHAM LINCOLN VISITED LAEM CHABANG AS SCHEDULED,

20  WHICH, PUTTING HIS KNOWLEDGE OF THE FRAUD ASIDE FOR A MOMENT,

21  RESULTED IN FACT IN OVER $500,000 IN FRAUD PROCEEDS DIRECTLY

22  TO THE POCKETS OF LEONARD FRANCIS AND GDMA.

23          NEXT, "I KNOW WE HAVE TO WORK PKCC AND SEPANGAR.

24  NOW, THE INDEFINITE ARTICLE HAS BEEN REPLACED BY THE

25  THIRD-PERSON PERSONAL PRONOUN.  "I KNOW WE HAVE TO WORK PKCC

1   AND SEPANGAR," PUNCTUATED BY LUXURIOUS VACATIONS FOR HIMSELF

2   AND HIS FAMILY, INCLUDING HIS REUNION TRIP TO CAMBODIA, ALL

3   EXPENSES PAID BY YOUR FRIENDLY DEFENSE CONTRACTOR.

4           IT CONTINUES ON AND ON AND ON, AND THE EVENTS SPIRAL.

5   WE OPAQUELY REFERENCE THE INCIDENT WHERE, BECAUSE OF THE

6   FESTIVITIES ON THE PREVIOUS EVENING, COMMANDER MISIEWICZ BROKE

7   CURFEW.  HE WASN'T BACK TO THE SHIP WHEN HE HAD TO BE AND THE

8   ADMIRAL REQUIRED ALL STAFF TO BE.  SO, INSTEAD OF TAKING

9   RESPONSIBILITY FOR THAT AND OWNING THAT MISTAKE, HE BOUGHT

10  ATHLETIC GEAR SO HE COULD SORT OF RUN BACK TO THE SHIP AND

11  PASS IT OFF AS HE WAS JUST OUT FOR A MORNING RUN.

12          LUXURY HOTEL ROOMS, PROSTITUTES, BOOZE, TRIPS,

13  CLASSIFIED SCHEDULES, SHIPS MOVING FROM PORT TO PORT,

14  INFLUENCE EXERCISED.  AND LET'S BE CLEAR ON THAT POINT,

15  BECAUSE IT'S SOMETHING SPENT QUITE A LOT OF TIME AT IN THE

16  PAPERS.  THE EVIDENCE SHOWS THAT HE USED AND EXERCISED HIS

17  INFLUENCE TO BENEFIT GDMA.  THAT'S ADMITTED IN THE PLEA.  THAT

18  WAS CLEARLY DESCRIBED BY MR. ADAMS IN HIS PRESENTATION.  HE

19  ADMITS THE EXAMPLES IN THE PLEA AGREEMENT ARE EXAMPLES OF

20  THIS.

21          THE ALLEGATION HAS NEVER BEEN, AS TO THIS DEFENDANT

22  OR ANY OTHER DEFENDANT, THAT HE SINGLE-HANDEDLY STEERED A SHIP

23  INTO ANY PORT.  THAT'S AN UNREASONABLE INFERENCE FROM WHAT THE

24  UNITED STATES HAS ALLEGED.  HE USED HIS SIGNIFICANT INFLUENCE

25  IN THE UNITED STATES NAVY TO BENEFIT GDMA AS OPPORTUNITIES

1    AROSE.

2           READ THE FITNESS REPORTS.  READ THE JUSTIFICATION FOR

3    HIS LEGION OF MERIT AWARD.  HE WAS TRUSTED IMPLICITLY, SO SAYS

4    THE COMMANDER OF THE 7TH FLEET.  HE HAD GAINED THE TRUST AND

5    CONFIDENCE.  HE WAS ABLE TO SINGLE-HANDEDLY, I THINK IT SAYS

6    AT ONE POINT, MOBILIZE THE 7TH FLEET TO RESPOND TO THE TSUNAMI

7    IN JAPAN.  THESE THINGS BELIE THE IDEA THAT HE DIDN'T HAVE

8    INFLUENCE TO DO ANYTHING.  IT'S BELIED CERTAINLY BY THE

9    CONTEMPORANEOUS EMAIL RECORD.

10          AS HE WROTE IN HIS PAPERS, WHICH I THINK IS A CANDID

11   ADMISSION AND TOTALLY CONSISTENT WITH THE GOVERNMENT'S

12   VIEWPOINT ON THIS, I THINK WE AGREE THAT HE WAS TRYING, AS HE

13   SAW IT, TO ADVANCE THE INTERESTS OF THE NAVY AND GDMA, AND

14   WHEN BOTH OF THOSE THINGS ALIGNED, HE STEPPED IN TO TRY TO

15   INFLUENCE PORT VISITS:  THE STENNIS TO PKCC; THE ABRAHAM

16   LINCOLN TO LAEM CHABANG; THE STENNIS BACK TO PKCC; THE GEORGE

17   WASHINGTON TO PKCC; AND THE STENNIS TO SEPANGAR.

18          AND WE HAVEN'T HAD THE OPPORTUNITY, YOUR HONOR, TO

19   PRESENT THE TESTIMONY AND EVIDENCE FROM THE OTHER PEOPLE

20   WORKING ON THE 7TH FLEET WHO WERE IN OPPOSITION TO SOME OR ALL

21   OF THESE PORT VISITS, FOR VERY VALID REASONS.  SO LET THE

22   DOCUMENTS AND THE EMAILS SPEAK FOR THEMSELVES ON THAT POINT

23   BECAUSE, FRANKLY, I DON'T THINK IT'S A MATTER OF AS MUCH

24   CONTENTION AS COMMANDER MISIEWICZ SUGGESTS IN HIS PAPERS.

25          HE DOES CITE ONE EXAMPLE, MUMBAI, IN HIS RESPONSE,

1    WHERE HE CLAIMS THAT WAS AN EXAMPLE WHERE HE WAS PUSHING HARD

2    FOR A PARTICULAR PORT VISIT, BUT THAT WAS NOT IN GDMA'S

3    INTEREST.  NOTHING COULD BE FURTHER, YOUR HONOR, FROM THE

4    TRUTH.  HE WAS CONSULTING WITH LEONARD FRANCIS IN THE

5    BACKGROUND, AND LEONARD FRANCIS WAS PUSHING JUST AS HARD FOR

6    THAT PORT VISIT TO MUMBAI (1) BECAUSE MUMBAI WAS OFF CONTRACT

7    AND LEONARD FRANCIS WOULD HAVE HAD AN OPPORTUNITY TO BID ON

8    IT; AND (2) HE WAS USING IT AS AN OPPORTUNITY TO UNDERMINE THE

9    PRIMARY COMPETITOR IN INDIA, A COMPANY CALLED MLF.  AND SO TO

10   THE EXTENT THAT IT'S CLAIMED THAT THAT ONE HAD NO INFLUENCE OR

11   NO CONNECTION TO GDMA IS FLAT WRONG.

12           NOVEMBER 29TH, 2012, YOUR HONOR, STANDS AS AN EVENT

13   THAT SIGNIFICANTLY DIFFERENTIATES THIS CASE FROM THE OTHERS,

14   AND ON THAT DATE COMMANDER MISIEWICZ AND ANOTHER NAVY OFFICER

15   MET LEONARD FRANCIS IN JAPAN, AND COMMANDER MISIEWICZ PASSED

16   TO LEONARD FRANCIS A SERIES, PROBABLY 40 OR MORE PAGES, OF

17   CLASSIFIED SHIP SCHEDULES AND OTHER MATERIAL.  THAT

18   INFORMATION CONTAINED THEREIN, YOUR HONOR, CLASSIFIED

19   INFORMATION THAT REMAINS CLASSIFIED AS WE STAND HERE TODAY

20   ABOUT THE U. S. BALLISTIC MISSILE DEFENSE FORCES DEPLOYED

21   THROUGHOUT ASIA.

22           THE PARTIES AGREE, YOUR HONOR, THAT THAT EVENT

23   RESULTED IN A SIGNIFICANT DISRUPTION OF GOVERNMENT FUNCTION

24   THAT WARRANTS A FOUR-LEVEL INCREASE IN THE GUIDELINE RANGE.

25   IF YOU'RE LOOKING AS A MEANS TO DIFFERENTIATE, LET ME SAY, PUT

1    IT DIFFERENTLY.  THE PRIMARY MEANS TO DIFFERENTIATE THIS CASE

2    FROM THE OTHERS IS THAT BREACH OF CLASSIFIED INFORMATION, AND

3    IT'S NOT LOST ON THE COURT THAT THAT EVENT BY ITSELF COULD

4    HAVE BEEN CHARGED DIFFERENTLY.

5         IN ADDITION, ON THAT DAY, COMMANDER MISIEWICZ

6    DISCUSSED AT LENGTH WITH LEONARD FRANCIS A POTENTIAL

7    REPLACEMENT FOR HIMSELF IN THE CONSPIRACY AS HE WAS SET TO

8    MOVE TO HIS NEXT POSITION IN THE NAVY.  HE WAS RECRUITING HIS

9    OWN REPLACEMENT SO THAT LEONARD FRANCIS WOULDN'T LOSE THE

10   AVAILABILITY OF THESE CLASSIFIED SCHEDULES AND OTHER INTERNAL

11   INFORMATION THAT HE SO COVETED.

12        THESE CONSPIRATORS WERE ALSO FASTIDIOUS IN THEIR DUE

13   CAUTION AND CARE TO SHIELD THEIR RELATIONSHIP FROM THE LIGHT

14   OF DAY.  COMMANDER MISIEWICZ DIDN'T REVEAL THIS RELATIONSHIP

15   IN HIS SECURITY CLEARANCE FORMS, AS REQUIRED, NOTWITHSTANDING

16   THE THOUSANDS OF TEXTS AND EMAILS TO LEONARD FRANCIS,

17   NOTWITHSTANDING, FRANKLY, THE COMPROMISED SERIES OF SOCIAL

18   INCIDENTS IN WHICH HE ENGAGED WITH LEONARD FRANCIS.

19        BUT, AS THE COURT KNOWS, LEONARD FRANCIS WAS ALSO

20   LEARNING FROM NCIS SUPERVISOR SPECIAL AGENT JOHN BELIVEAU

21   ABOUT HOW THE INVESTIGATIONS WERE UNFOLDING.  HE WAS GETTING

22   INSIDE INFORMATION FROM BENEDICT ARNOLD INSIDE OUR CAMP, AND

23   LEONARD FRANCIS WAS PASSING THAT INFORMATION ALONG TO

24   COMMANDER MISIEWICZ AS IT WAS RELEVANT.

25        FIRST, HE LET COMMANDER MISIEWICZ KNOW THAT THE

1    GOVERNMENT HAD ACCESSED HIS EMAIL ACCOUNT, AND THAT INSPIRED

2    COMMANDER MISIEWICZ TO DELETE BOTH OF THE EMAIL ACCOUNTS, YOUR

3    HONOR, THAT ARE CITED IN THE PAPERS, THE MUSTFIVE ACCOUNT AND

4    THE LITTLEBROLGF ACCOUNT.  THOSE ACCOUNTS WERE DELETED FROM

5    EXISTENCE BECAUSE OF LEONARD FRANCIS' WARNINGS ABOUT THE

6    INVESTIGATION.

7         BUT IT DIDN'T STOP HIM.  HE STARTED A NEW COVERT

8    EMAIL ACCOUNT THAT THE UNITED STATES DIDN'T LEARN OF UNTIL

9    QUITE LATE IN THE DAY, AN EMAIL ACCOUNT THAT IS

10   CROCKBAITWITHRICE2013CBWR2013@GMAIL.COM, FROM WHICH HE SENDS

11   TO LEONARD FRANCIS HIS LEGION OF MERIT AWARD, WRITING, "TEAM

12   BRO.  COULDN'T HAVE DONE SEVERAL THINGS WITHOUT KNOWING GROUND

13   TRUTH FROM UNKNOWN SOURCES.  HEE, HEE, HEE."

14        AND ON JULY 19TH, 2013, LEONARD FRANCIS SENT HIM AN

15   EMAIL SAYING, "THE CASES ARE CLOSING.  THE CASES ARE CLOSING."

16   NOW, THEY ARGUE IN THEIR RESPONSE THAT IT WAS AN ESPIONAGE

17   CASE, THAT IT WAS SOMEHOW UNRELATED.  THE ESPIONAGE CASE

18   INVOLVED LEONARD FRANCIS AND THE RECEIPT OF THINGS OF VALUE

19   FROM LEONARD FRANCIS IN RETURN FOR THE PASSING OF INFORMATION.

20        YOUR HONOR, THESE FACTS, THE NATURE AND CIRCUMSTANCES

21   OF THIS OFFENSE ALONE SUGGEST THE NEED FOR A WITHIN-GUIDELINE

22   RANGE SENTENCE OF 78 MONTHS.  I THINK THE CONCLUSION IN THIS

23   REGARD IS UNMISTAKABLE.  THE FACTS ARE EGREGIOUS, THE

24   CONSEQUENCES PERNICIOUS, EXAGGERATED THROUGHOUT BY NOT JUST

25   HIS RANK OF COMMANDER AND THEN CAPTAIN-SELECT, BUT REALLY HIS

1    POSITION WITHIN THE 7TH FLEET, THE TRUST AND CONFIDENCE THAT

2    HE HAD GAINED FROM THE COMMANDER OF THE 7TH FLEET AND,

3    FRANKLY, THE INFLUENCE THAT THAT POSITION OF OPERATIONS HOLDS

4    OVER THE ENTIRETY OF THE 7TH FLEET.

5            THE TENS OF THOUSANDS OF -- I'M SORRY.  THE

6    THOUSANDS, THOUSANDS OF EMAILS AND TEXT MESSAGES AND PERSONAL

7    CONVERSATIONS.  THE TENS OF THOUSANDS OF DOLLARS OF THINGS OF

8    VALUE CAUSING DEMONSTRABLE LOSS TO THE GOVERNMENT.  THE

9    CLASSIFIED INFORMATION ON SHIP SCHEDULES, ON SUBMARINE

10   SCHEDULES, THE HARM OF WHICH I DON'T THINK I NEED TO COVER

11   AGAIN WITH THE COURT.  THE INTERNAL INFORMATION ABOUT THE

12   NAVY'S WORKINGS AND BUSINESS.  AND THEN NOVEMBER 29TH, 2012,

13   CLASSIFIED BREACH THAT CONTAINED THE BALLISTIC MISSILE

14   INFORMATION.

15           COUPLE THAT WITH THE PORT VISIT INFLUENCE, OF THE

16   FIVE PORT VISITS THAT ARE ENUMERATED, OF RECRUITING HIS

17   REPLACEMENT, OF THE ONGOING AND PERVASIVE STEPS TO OBSCURE AND

18   OBSTRUCT KNOWLEDGE OF LAW ENFORCEMENT, KNOWING FULL WELL THAT

19   THERE WAS AT LEAST ONE CORRUPTION INVESTIGATION INVOLVING HIM.

20   THAT THIS WAS NOT A UNITARY ACT, YOUR HONOR.  THIS WAS

21   PERVASIVE OVER TWO YEARS IN HIS POSITION AS DEPUTY N3 OF THE

22   7TH FLEET, THAT THESE ACTS WERE WELL CONSIDERED.

23           THERE ARE NO SENTENCING DISPARITIES THAT WOULD RESULT

24   IN IMPOSING THE GOVERNMENT'S RECOMMENDED 78-MONTH SENTENCE.  A

25   COUPLE OF THINGS I'VE SPOKEN TO WOULD DIFFERENTIATE THE

1    SENTENCE, THE FIRST OF WHICH, WHICH IS ABUNDANTLY CLEAR, IS

2    THAT THE SENTENCE IS WITHIN THE GUIDELINES, AS WERE THE OTHER

3    SENTENCES THAT THE COURT IMPOSED, AND SO THE GUIDELINES AND

4    THE SPECIFIC OFFENSE CHARACTERISTICS OF THIS OFFENSE ACCOUNT

5    FOR THE DIFFERENCES.  PRIMARILY, A FOUR-LEVEL INCREASE FOR THE

6    SIGNIFICANT DISRUPTION OF GOVERNMENT FUNCTION OCCASIONED BY

7    THE NOVEMBER 29TH, 2012, CLASSIFIED INFORMATION BREACH, AND AN

8    ADDITIONAL TWO-LEVEL INCREASE BASED ON THE AMOUNT OF LOSS TO

9    THE UNITED STATES, ALL OF WHICH THE PARTIES AGREE ARE THE

10   APPROPRIATE CALCULATION.

11        THE OTHER DEFENDANTS WERE NO MORE INVOLVED IN THE

12   PERVASIVE FRAUD COMMITTED BY GDMA AND LEONARD FRANCIS THAN

13   COMMANDER MISIEWICZ WAS, AND THE CHARACTERIZATION BY MR. ADAMS

14   THAT THEY WERE OR HAD ADMITTED THAT THEY WERE IS FLAT WRONG.

15   THEY WERE NOT PART OF SUBMITTING FALSE INVOICES.  THOSE OTHER

16   DEFENDANTS WERE NOT PART OF CREATING FALSE BIDS BY

17   SUBCONTRACTORS, AND NO ALLEGATIONS BY THE UNITED STATES HAVE

18   EVER SAID THEY WERE.

19        WHAT THEY ALL WERE, INCLUDING COMMANDER MISIEWICZ,

20   WAS PART OF A PERNICIOUS CYCLE OF CRIME, ONE EVENT FEEDING ON

21   THE NEXT, FEEDING ON THE NEXT, AND AROUND AND AROUND WE GO FOR

22   HOW MANY YEARS.  FRAUD-GENERATED PROCEEDS TO PAY BRIBES.  AN

23   INFLUENCE WITHIN THE 7TH FLEET CREATED THE OPPORTUNITY TO

24   COMMIT MORE FRAUD.  THAT'S THE REALITY.  THAT ISN'T AN

25   ALLEGATION.  THAT'S THE REALITY OF THIS CRIME, IRRESPECTIVE OF

1    ANY PARTICULAR MEMBER OF THE UNITED STATES NAVY'S KNOWLEDGE OF

2    THE FRAUD THAT WAS BEING PERPETRATED.  AND THAT, YOUR HONOR,

3    IS NOT A MEANS TO DIFFERENTIATE THESE CASES.

4         THE SENTENCING GUIDELINES PROVIDE THE MEANS TO

5    DIFFERENTIATE THESE CASES, AS THEY HAVE IN THE PREVIOUS CASES.

6    THEY SET AN UNDERSTANDING OF WHAT THIS CONDUCT WARRANTS, AND

7    IN THIS CASE THE OTHER FACTORS THAT THE COURT MUST CONSIDER

8    DIRECT THE COURT TO IMPOSE A SENTENCE IN THE MIDDLE OF THE

9    GUIDELINES.

10        THE DEFENDANT'S RANK.  THE PERVASIVENESS AND DURATION

11   OF THE SCHEME.  THE PERNICIOUS EFFECTS AND CONSEQUENCES THAT

12   THE LEAK OF CLASSIFIED INFORMATION HAS TO THE SAFETY OF THIS

13   COUNTRY.  THE GENERAL DETERRENCE NECESSARY AS MORE PEOPLE ARE

14   PUT INTO THESE SIMILAR POSITIONS, AS THE NAVY SAILS THROUGHOUT

15   THE WORLD, AND A WAY THAT IS INCREASING, NOT DECREASING, AS A

16   WAY THAT WE PIVOT.  TO ASIA, AS A WAY THAT THE NAVY IS GOING

17   TO CONTINUE TO HAVE AN INCREASING ROLE IN POLICING THAT

18   REGION.

19        JUST LAST WEEK, I THINK SECRETARY OF DEFENSE ASH

20   CARTER WAS REMARKING THAT THE CHINESE HAVE DECIDED TO BUILD

21   ANOTHER OUTPOST ON SCARBOROUGH SHOAL, 120 MILES FROM MANILA.

22   THE NAVY IS GOING TO CONTINUE TO BE IN THIS REGION AS WE

23   CONFRONT HOSTILITIES OR PERCEIVED HOSTILITIES FROM OTHER

24   COUNTRIES, AND GENERAL DETERRENCE IS NECESSARY TO SEND THE

25   APPROPRIATE MESSAGE THAT SUCH CONDUCT, HOWEVER CHARACTERIZED,

1    IS ILLEGAL AND UNWARRANTED.

2            IT PROMOTES RESPECT FOR THE LAW, SUGGESTING THAT,

3    REGARDLESS OF RANK, NO ONE IS ABOVE THE LAW.

4            YOUR HONOR, ADMIRAL YUEN, WHO WAS HERE AND SAID IT

5    BEFORE THE COURT, AND I WILL REPEAT IT AGAIN, NO AMOUNT OF

6    MONEY, NO AMOUNT OF MONEY, YOUR HONOR, IS WORTH SACRIFICING

7    WHAT WE OWE OUR SHIPMATES AND THE U. S. NAVY.

8            THANK YOU, YOUR HONOR.

9            THE COURT:  THANK YOU.

10           LET ME HEAR FROM PROBATION, AND THEN I'LL ASK YOU IF

11   YOU HAVE SOMETHING.  GO AHEAD.

12           I SHOULD INDICATE THAT THERE WERE OBJECTIONS TO THE

13   PSR, BUT THE ADDENDUM TO THE PSR, IN THE COURT'S MIND, DEALS

14   WITH THEM, AND I THINK THE DEFENSE WOULD AGREE THAT YOU'VE

15   ACCEPTED THE CLARIFICATION.  CLEARLY, THIS WAS AN ENORMOUS

16   CASE FROM A DISCOVERY STANDPOINT AND YOU'VE HAD LIMITED TIME

17   COMPARED TO DEFENSE COUNSEL.  SO THEY'VE MADE SOME

18   CLARIFICATIONS, I'LL CALL THEM.  YOU'VE ACCEPTED THEM, AND I

19   THINK THAT DEALS ADEQUATELY WITH THE OBJECTIONS IF DEFENSE

20   COUNSEL AGREE.

21           MR. ADAMS:  YES, WE AGREE, YOUR HONOR.

22           THE COURT:  OKAY.  THANK YOU.

23           ANYTHING YOU WOULD LIKE TO ADD TO ANYTHING THIS

24   MORNING?

25           MR. TORRES:  THERE IS NOTHING ADDITIONAL TO INCLUDE,

1    YOUR HONOR.

2              THE COURT:  OKAY.  THANK YOU VERY MUCH.

3              MR. ADAMS, GO AHEAD.

4              MR. ADAMS:  YOUR HONOR, IF I COULD JUST MAKE --

5              THE COURT:  OF COURSE.

6              MR. ADAMS:  -- A COUPLE OF OBSERVATIONS AND COMMENTS.

7              IT'S CLEAR THAT THE GOVERNMENT CONTINUES TO FAULT

8    MICHAEL MISIEWICZ FOR THE PERVASIVE GDMA FRAUD THAT HE DID NOT

9    KNOW ABOUT.  THE PORT VISIT DECISION PROCESS IS

10   EXTRAORDINARILY COMPLEX.  MUCH OF IT IS CLASSIFIED.  THE

11   SCHEDULES FROM NOVEMBER 29, 2012, WE NEVER SAW THOSE RECORDS,

12   SO WE REALLY CAN'T ADDRESS THEM, BECAUSE THEY'RE CLASSIFIED

13   AND THEY REMAIN CLASSIFIED.

14             BUT THE DISCOVERY THAT WE DID RECEIVE DEMONSTRATES

15   FOR US THAT THE PEARL PORT VISITS THAT WERE BEING DEMANDED BY

16   LEONARD FRANCIS AND GDMA ACTUALLY DECREASED UNDER MICHAEL

17   MISIEWICZ'S WATCH, AND THE PORT VISITS, THE PEARL PORT VISITS

18   THAT LEONARD FRANCIS DEMANDED, OR THE PORTS THAT HE DID NOT

19   WANT -- I'M SORRY -- HONG KONG, SINGAPORE, MANILA, THOSE PORT

20   VISITS ACTUALLY INCREASED, AND WE BASE THAT ON THE RECORDS

21   THAT WE RECEIVED IN DISCOVERY AND OUR ANALYSIS OF THOSE

22   RECORDS.

23             THE EMAIL ACCOUNTS, THE ACCOUNTS THEMSELVES WERE NOT

24   DELETED.  THERE MAY HAVE BEEN AN ATTEMPT TO DELETE, BUT THEY

25   WERE RECOVERED AND WE HAD THEM IN DISCOVERY.

1          AND I DIDN'T MEAN TO SUGGEST THAT THE OTHER

2     DEFENDANTS, INCLUDING LIEUTENANT COMMANDER MALAKI, ACTUALLY

3     CREATED FALSE INVOICES.  WHAT THEY DID WAS, THEY KNOWINGLY

4     PROVIDED LEONARD FRANCIS WITH COMPETITORS' PRICING

5     INFORMATION, COMPETITORS' BIDS AND OTHER CONTRACT INFORMATION

6     SO THAT GDMA COULD CREATE INVOICES AND CREATE CONTRACTS THAT

7     WOULD ASSURE THAT THE CONTRACTS WOULD GO TO GDMA AS RECENTLY

8     AS 2011.

9          AND SO WHAT WE'VE TRIED TO DO IS COME TO THE COURT

10    WITH AN EVIDENCE-BASED ANALYSIS OF WHAT WENT ON, AND WE DON'T

11    THINK THAT CIRCLE OF FRAUD INCLUDED MICHAEL MISIEWICZ AT ALL.

12    WHAT HE DID AND WHAT HE DID THAT WAS WRONG WAS HE TOOK THINGS

13    OF VALUE.  HE TOOK TRAVEL.  HE TOOK ENTERTAINMENT.  HE TOOK

14    THOSE THINGS AND THEN HE GOT HIMSELF -- HE MADE DECISIONS AS A

15    COMMANDER IN THE NAVY.  HE MADE DECISIONS ON PORT VISITS.  HE

16    MADE -- HE WEIGHED IN ON PORT VISITS, BUT HIS POSITION WAS

17    COMPROMISED BY THE THINGS OF VALUE THAT HE TOOK WHEN HE JOINED

18    THAT CONSPIRACY WITH LEONARD FRANCIS.  BUT HE DID NOT GET

19    INVOLVED IN THE FRAUD SIDE OF IT AT ALL, AND WE THINK THAT'S A

20    MAJOR DISTINCTION.  WE THINK THAT'S WHY A SENTENCE OF 41

21    MONTHS IS SUFFICIENT, NOT GREATER THAN NECESSARY.

22          THANK YOU, YOUR HONOR.

23          THE COURT:  OKAY.

24          IS THE MATTER SUBMITTED?

25          MR. PLETCHER, IS THERE ANYTHING FURTHER, SIR?

1          MR. PLETCHER:  NO.  THANK YOU, YOUR HONOR.

2          THE COURT:  OKAY.

3          THE COURT HAS ADEQUATE INFORMATION TO EXERCISE

4    SENTENCING DISCRETION THIS MORNING, AND I HAVE AN INCREDIBLE

5    AMOUNT OF INFORMATION.

6          (OFF-THE-RECORD DISCUSSION BETWEEN THE COURT AND THE

7    COURTROOM CLERK)

8          THE COURT:  OH, YES.  WHOEVER WOULD LIKE TO STAND AT

9    THE PODIUM WITH MR. MISIEWICZ, PLEASE COME FORWARD.  MAYBE

10   BOTH COUNSEL AND MR. MISIEWICZ, IF YOU WOULD PLEASE MOVE

11   FORWARD.  THANK YOU.

12         I HAVE AN INCREDIBLE AMOUNT OF INFORMATION THAT'S

13   BEEN PROVIDED, AND AS I INDICATED, I'VE GONE THROUGH ALL OF

14   IT.  SO I HAVE ADEQUATE INFORMATION, AND I LOOK AT A NUMBER OF

15   THINGS.  AS HAS ALREADY BEEN INDICATED, I LOOK FOR A SENTENCE

16   THAT'S SUFFICIENT BUT NOT GREATER THAN WHAT'S NECESSARY GIVEN

17   THE FACTS AND CIRCUMSTANCES OF THIS CASE.  I MUST MAKE AN

18   ACCURATE GUIDELINE CALCULATION, BUT I DO HAVE DISCRETION TO

19   MOVE WITHIN, CERTAINLY WITHIN THE GUIDELINE RANGE OR BELOW OR

20   ABOVE THE GUIDELINE RANGE AS THIS COURT MIGHT DEEM

21   APPROPRIATE.

22         IN READING ALL OF THE LETTERS, IT BECAME CLEAR THAT

23   SO MANY PEOPLE ASKED THAT THE COURT TAKE INTO ACCOUNT

24   EVERYTHING ABOUT MR. MISIEWICZ, AND CERTAINLY THE COURT DOES

25   THAT.  AND THE LETTERS CERTAINLY GAVE ME A SENSE OF EVERYTHING

1    THAT YOU BRING BEFORE THE COURT, SIR, AND I DO TAKE THAT INTO

2    ACCOUNT.  YOUR VERY EXTRAORDINARY MILITARY CAREER, HOW YOU

3    CAME TO THIS COUNTRY, A VARIETY OF THINGS WERE POINTED OUT IN

4    GREAT DETAIL, AND I APPRECIATE THAT.  YOUR RISE IN THE NAVY

5    WAS -- TO SAY IT WAS REMARKABLE WOULD BE AN UNDERSTATEMENT.

6    YOU ROSE TO THE RANK OF COMMANDER AND CAPTAIN-SELECT, AND

7    THAT'S QUITE EXTRAORDINARY.  IT CARRIES -- THAT RANK CARRIES

8    WITH IT A GREAT DEAL OF POWER, A GREAT DEAL OF RESPECT, AND

9    THAT'S ACKNOWLEDGED, I THINK, IN THE NAVY ITSELF, OBVIOUSLY,

10   BUT ALSO THROUGHOUT THIS COUNTRY.

11        IN RECOGNIZING THAT, IT MAKES THE CONDUCT MORE

12   AGGRAVATED TO THE COURT, THOUGH, BECAUSE THE POWER AND THE

13   INFLUENCE THAT YOU HAD WAS QUITE EXTRAORDINARY, AND THEN YOU

14   BASICALLY, OVER A CONSIDERABLE PERIOD OF TIME -- SEVERAL OF

15   THE LETTERS SAY IT'S NOT JUST ONE INCIDENT, CONSIDER THE WHOLE

16   PERSON.  WELL, I WOULD HAVE TO SUGGEST THAT THIS WASN'T JUST

17   ONE INCIDENT.  IT WASN'T WHAT WE SOMETIMES SAY IN CRIMINAL

18   CASES, IT WASN'T AN ABERRATION.  IT WAS A LENGTHY PERIOD OF

19   TIME FOR YOU TO REFOCUS, GET YOUR MORAL COMPASS BACK AND DO

20   THE RIGHT THING, BUT IT DIDN'T HAPPEN.  THIS EXTENDED OVER A

21   PERIOD OF TIME THAT YOU CONSPIRED WITH MR. FRANCIS OVER

22   THOUSANDS OF TIMES, BETRAYING, SIR, YOUR COUNTRY AND YOUR

23   SHIPMATES.  THE DECISIONS THAT YOU PARTICIPATED IN WERE

24   INFLUENCED IN AN ATTEMPT TO PROMOTE GDMA AND YOUR OWN

25   SELF-INTEREST, AGAIN AT THE EXPENSE OF YOUR SHIPMATES AND THIS

1   COUNTRY.

2           SO I THINK MR. ADAMS SAID THIS, AND IT'S TRUE, THIS

3   IS A TRAGEDY.  IT'S A TRAGEDY FOR YOU AND EVERYBODY IN THIS

4   ROOM.  IT'S AN EQUAL TRAGEDY FOR THE UNITED STATES NAVY AND

5   FOR THIS COUNTRY TO HAVE HAD THIS SORT OF EVENT, SERIES OF

6   EVENTS AND CIRCLE OF FRAUD, CONSPIRACY, HOWEVER YOU WOULD LIKE

7   TO CHARACTERIZE IT, OCCUR.

8           I'M GOING TO BEGIN BY MAKING THE FINDINGS.  I DON'T

9   BELIEVE THERE'S ANY DISAGREEMENT ON THE GUIDELINE FINDINGS.  I

10  THINK THE DEFENSE IS ASKING THE COURT TO VARY DOWNWARD THROUGH

11  3553(A) TO REACH THE REQUESTED SENTENCE.  BUT LET ME GO

12  THROUGH THIS AT THIS JUNCTURE.

13          THE BASE OFFENSE LEVEL FOR THIS, THESE OFFENSES, AND

14  YOU'VE ENTERED A PLEA TO TWO COUNTS, IS A 14.  THERE'S A PLUS

15  TWO ADDED BECAUSE THERE WAS MORE THAN ONE BRIBE.  BECAUSE OF

16  THE AMOUNT OF LOSS, A PLUS SIX IS ADDED.  AND BECAUSE OF YOUR

17  RANK AND THE SENSITIVE NATURE OF YOUR POSITION IN THE

18  MILITARY, MR. MISIEWICZ, A PLUS FOUR IS ADDED.  AND THOSE

19  NUMBERS COME OUT TO A 26.  SO THAT'S THE ADJUSTED OFFENSE

20  LEVEL THAT I'M DEALING WITH, MR. MISIEWICZ.

21          YOU'VE ACCEPTED RESPONSIBILITY, AND THAT PERMITS ME

22  TO TAKE A THREE-POINT REDUCTION, AND THE TOTAL OFFENSE LEVEL

23  IS NOW A 23.  YOU HAVE NO CRIMINAL HISTORY POINTS, SIR.

24  YOU'RE IN CRIMINAL HISTORY CATEGORY I.  THERE'S A PLUS FOUR

25  ADDED FOR THE DISRUPTION OF GOVERNMENTAL FUNCTION, AND THAT'S

1   THE DATE AND EVENT OF THE TURNOVER OF THE BALLISTIC DEFENSE

2   MISSILE INFORMATION, AND I THINK THAT'S APPROPRIATELY APPLIED,

3   AND I BELIEVE IT'S AGREED TO THROUGH THE PLEA AGREEMENT.  SO

4   THAT TAKES ME TO A TOTAL OFFENSE LEVEL OF 27, AND AT 27, ONE,

5   THE RANGE OF IMPRISONMENT IS 70 TO 87 MONTHS.

6           SO THE QUESTION BECOMES AT THIS JUNCTURE, WHAT, IF

7   ANY, DISCRETION SHOULD THIS COURT EXERCISE TO GO BELOW OR

8   ABOVE THE GUIDELINE THAT I'M DEALING WITH?  I BELIEVE THE

9   GUIDELINE CALCULATION THAT I HAVE MADE IS AN ACCURATE ONE.

10          AND IN LOOKING AT THE 3553(A) FACTORS, WHICH IS A

11  SERIES OF FACTORS SET FORTH IN THE CODE THAT I MUST CONSIDER,

12  TITLE 18 UNITED STATES CODE 3553(A), I LOOK AT THE NATURE AND

13  THE CIRCUMSTANCES OF THE OFFENSE, AND I'VE SENTENCED A NUMBER

14  OF PEOPLE IN THIS CASE ALREADY.  I'M FAMILIAR WITH THE CASE.

15  I SPENT THE BETTER PART OF THIS WEEK READING EVERYTHING THAT'S

16  BEEN SUBMITTED.  I THINK I KNOW YOUR HISTORY AND

17  CHARACTERISTICS, SIR, AND I MUST TAKE ALL OF THOSE INTO

18  ACCOUNT.  YOUR HISTORY IN THE NAVY, YOUR HISTORY IN COMING TO

19  THIS COUNTRY ARE QUITE REMARKABLE.

20          I NEED TO CONSIDER THE SERIOUSNESS OF THIS OFFENSE,

21  AND I THINK IT'S EXTRAORDINARILY SERIOUS, MAYBE ONE OF THE

22  MOST SERIOUS THAT I'VE HAD DURING MY TIME ON THE BENCH.

23          I NEED TO PROMOTE RESPECT FOR THE LAW AND JUST

24  PUNISHMENT FOR WHAT'S OCCURRED HERE.

25          I NEED TO PROTECT THE PUBLIC.

1      I NEED TO CONSIDER SPECIFIC DETERRENCE.  I DON'T

2  THINK, MR. MISIEWICZ, YOU'LL EVER BE BACK HERE IN FRONT OF ME.

3  I DON'T DOUBT THAT.  BUT I THINK, I THINK THE GENERAL

4  DETERRENCE MESSAGE NEEDS TO BE A SIGNIFICANT ONE, BECAUSE WE

5  OPERATE IN AN ENORMOUS SYSTEM WITH A LOT OF THINGS OR A LOT OF

6  MOVING PARTS, AS THIS CASE WELL POINTED OUT.

7      I NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES,

8  AND I NEED TO PROVIDE RESTITUTION.

9      SO I'VE SPENT A GREAT DEAL OF TIME THINKING ABOUT

10  THIS, AS YOU MIGHT IMAGINE, AND I DECLINE TO EXERCISE

11  DISCRETION TO GO BELOW THIS GUIDELINE RANGE.  I DON'T THINK

12  IT'S WARRANTED IN THIS CASE.

13      I DO TAKE INTO ACCOUNT THE MILITARY CAREER AND THE

14  POSITIVE THINGS THAT HAVE BEEN SAID ON YOUR BEHALF.  AND IN

15  SAYING THAT, MR. MISIEWICZ, THAT'S THE REASON I'M NOT GOING

16  ABOVE GUIDELINE AND I'M STICKING WITH A MID-RANGE OF 78 MONTHS

17  IN THE CUSTODY OF THE BUREAU OF PRISONS.  I BELIEVE THAT'S

18  SUFFICIENT BUT NOT GREATER THAN WHAT'S NECESSARY GIVEN THE

19  FACTS OF YOUR CASE.

20      I'M GOING TO FOLLOW THAT WITH A THREE-YEAR PERIOD OF

21  SUPERVISED RELEASE.  DURING THOSE THREE YEARS, YOU'RE NOT TO

22  VIOLATE ANY LAWS, STATE, FEDERAL, OR LOCAL, OR YOU COULD BE

23  BROUGHT BACK BEFORE THE COURT, SIR, AND YOU COULD SERVE

24  ADDITIONAL TIME IN CUSTODY, UP TO THE THREE YEARS.

25      ALL THE STANDARD CONDITIONS OF SUPERVISION WILL APPLY

1    DURING THOSE THREE YEARS, BUT IN ADDITION THE FOLLOWING

2    SPECIAL CONDITIONS WILL APPLY.

3         THE FIRST IS THAT YOU SUBMIT YOUR PERSON, PROPERTY,

4    RESIDENCE, OFFICE, OR VEHICLE TO A SEARCH CONDUCTED BY

5    PROBATION, PROVIDED THE SEARCH IS DONE AT A REASONABLE TIME,

6    IN A REASONABLE MANNER, BASED ON A REASONABLE SUSPICION OF

7    CONTRABAND OR EVIDENCE OF A VIOLATION OF A CONDITION OF YOUR

8    RELEASE.  IF YOU FAIL TO SUBMIT TO A SEARCH, THAT COULD BE

9    GROUNDS FOR REVOCATION, AND WHOEVER LIVES WITH YOU MUST KNOW

10   THAT THE HOME COULD BE SUBJECT TO SEARCH PURSUANT TO THIS

11   CONDITION.

12        SECOND SPECIAL CONDITION:  PROVIDE COMPLETE

13   DISCLOSURE OF YOUR PERSONAL AND BUSINESS FINANCIAL RECORDS TO

14   PROBATION AS REQUESTED.

15        THIRD IS:  NOTIFY THE COLLECTIONS UNIT OF THE

16   U. S. ATTORNEY'S OFFICE OF ANY INTEREST AND PROPERTY OBTAINED

17   DIRECTLY OR INDIRECTLY, INCLUDING ANY INTEREST OBTAINED UNDER

18   ANY OTHER NAME OR ENTITY, INCLUDING A TRUST, PARTNERSHIP, OR

19   CORPORATION, UNTIL YOUR FINE OR RESTITUTION ARE PAID IN FULL,

20   AND I'LL TALK ABOUT THOSE IN JUST A MOMENT.

21        AND FOURTH:  NOTIFY THE COLLECTIONS UNIT OF THE

22   UNITED STATES ATTORNEY'S OFFICE BEFORE TRANSFERRING ANY

23   INTEREST IN PROPERTY OWNED DIRECTLY OR INDIRECTLY, INCLUDING

24   ANY INTEREST HELD OR OWNED UNDER ANY OTHER NAME OR ENTITY,

25   INCLUDING A TRUST, PARTNERSHIP, OR CORPORATION.

1              I THINK THE RESTITUTION AMOUNT THAT'S AGREED UPON IS
2    95,000.  IS THAT CORRECT?
3              MR. ADAMS:  IT IS, YOUR HONOR.
4              THE COURT:  OKAY.  SO I'M ORDERING $95,000 IN
5    RESTITUTION.
6              I UNDERSTAND EVERYBODY'S POSITION ON THIS, BUT I AM
7    ORDERING A HUNDRED-THOUSAND-DOLLAR FINE AND A SPECIAL
8    ASSESSMENT OF $200.
9              NOW, I WILL CERTAINLY ENTERTAIN, AND I DO BELIEVE
10   THERE'S A REQUEST FOR SELF-SURRENDER ON AUGUST 1ST OF THIS
11   YEAR.  I NEGLECTED TO ASK THE GOVERNMENT IF THERE'S ANY
12   OBJECTION.
13             MR. PLETCHER:  THERE IS NOT.
14             THE COURT:  OKAY.  THANK YOU.
15             MR. TORRES:  YES, YOUR HONOR.
16             THE COURT:  LET'S DO A PAYMENT SCHEDULE.
17             MR. TORRES:  YES, YOUR HONOR.  IN ADDITION TO THAT,
18   WOULD THE COURT CARE TO DIFFERENTIATE BETWEEN THE TWO COUNTS?
19             THE COURT:  OH, I WILL.  THANK YOU, THANK YOU.
20             I'M GOING TO INDICATE THAT THIS IS ON EACH COUNT TO
21   RUN CONCURRENT, COUNSEL.
22             SO THANK YOU, THANK YOU FOR THAT.
23             I'LL DO A PAYMENT SCHEDULE.
24             MR. TORRES:  SOMETHING ADDITIONAL, YOUR HONOR.
25             THE COURT:  CERTAINLY.  GO AHEAD.

1        MR. TORRES:  COUNT ONE HAS A STAT MAX OF 60 MONTHS.

2        THE COURT:  OF 60 MONTHS.  OKAY.  LET' CLARIFY THIS,

3   THEN.  GO AHEAD.  SO WE'LL DO -- MR. PLETCHER.

4        MR. PLETCHER:  WELL, THE COURT, I THINK, HAS SOME

5   CHOICES, BUT I THINK YOU CAN ORDER 60 MONTHS ON COUNT ONE AND

6   THEN ANOTHER 18 MONTHS --

7        THE COURT:  ON THE OTHER.

8        MR. PLETCHER:  -- ON TOP OF THAT.

9        THE COURT:  TO RUN CONCURRENT.

10       MR. PLETCHER:  78 MONTHS.

11       THE COURT:  TO RUN CONSECUTIVELY, I MEAN.

12       MR. PLETCHER:  OR 78 MONTHS ON COUNT TWO TO RUN

13   CONCURRENT, WHICH IS PROBABLY BETTER, ALTHOUGH I DEFER A BIT

14   TO PROBATION ON THE MACHINATIONS.

15       THE COURT:  OKAY.

16       MR. TORRES:  THAT WOULD BE THE CLEANEST WAY, YOUR

17   HONOR.

18       THE COURT:  78 ON COUNT TWO TO RUN CONCURRENT WITH

19   THE STAT MAX ON COUNT ONE?

20       MR. PLETCHER:  YES, YOUR HONOR.

21       MR. TORRES:  YES, YOUR HONOR.

22       THE COURT:  OKAY.  VERY WELL.  THAT'S WHAT WE WILL

23   DO.

24       I'D LIKE TO SET A PAYMENT SCHEDULE FOR THE FINE.

25       MR. PLETCHER:  YOUR HONOR, I'M SORRY TO INTERRUPT.

1    THE CRIMINAL FINE OF A HUNDRED THOUSAND DOLLARS IS APPLIED TO

2    BOTH TO BE CONCURRENT.  IS THAT ALSO (PAUSE) --

3              MR. TORRES:  WE HAVE NO OBJECTION.

4              MR. PLETCHER:  -- THE APPROPRIATE WAY TO DO THAT?

5              THE COURT:  CORRECT.  AND THE SUPERVISED RELEASE IS

6    CONCURRENT.

7              MR. PLETCHER:  YES.

8              THE COURT:  THE TERMS AND CONDITIONS ARE CONCURRENT.

9              THANK YOU.

10             I UNDERSTOOD FROM THE PAPERWORK THAT WHEN THE BOND

11   WAS RELEASED, THAT WAS GOING TO GO TO PAY SOMETHING.  I

12   THOUGHT IT WAS THE RESTITUTION.

13             MR. ADAMS:  THAT IS CORRECT, YOUR HONOR.  I THINK

14   IT'S SENTENCING EXHIBIT K --

15             THE COURT:  CORRECT.

16             MR. ADAMS:  -- IS AN AGREEMENT THAT AUTHORIZES, AND

17   WE'VE SPOKEN TO THE PEOPLE IN FINANCIAL ABOUT THIS.  WE

18   BELIEVE THE MONEY IS ACTUALLY STILL HELD IN COLORADO, BUT THE

19   COURT, THIS COURT, CAN ISSUE A MINUTE ORDER DIRECTING THAT THE

20   MONEY BE TRANSFERRED HERE FOR PAYMENT PURSUANT TO THAT

21   AGREEMENT IN SENTENCING TO BE PAID TO THE CLERK OF THE COURT

22   IN THE AMOUNT OF 95,000.  THE BALANCE IS TO BE RETURNED AS

23   PART OF THAT AGREEMENT --

24             THE COURT:  OKAY.

25             MR. ADAMS:  -- TO HIS WIFE.

1          THE COURT:  AND WHAT WOULD YOUR REQUEST BE ON A

2    PAYMENT SCHEDULE FOR THE BALANCE OF THE FUNDS?  AND THEN I'LL

3    ASK YOU ABOUT A HOUSING DESIGNATION, AND THERE'S NO OBJECTION

4    TO A SELF-SURRENDER OF AUGUST 1ST.

5          MR. ADAMS:  RIGHT.  NO OBJECTION TO THAT.

6          THE COURT:  THERE'S NO OBJECTION.

7          MR. ADAMS:  WE'RE ASKING FOR A DESIGNATION TO LOMPOC

8    HERE IN CALIFORNIA.

9          THE COURT:  OKAY.  CERTAINLY.  I WILL CERTAINLY DO

10   THAT ON YOUR BEHALF, MR. MISIEWICZ.  I DON'T CONTROL BUREAU OF

11   PRISONS' HOUSING.  IF THEY DEEM IT APPROPRIATE, THEY WILL

12   CERTAINLY FOLLOW THAT RECOMMENDATION.

13         MR. ADAMS:  YOUR HONOR, OUR VIEW, OF COURSE, AND WE

14   PUT IT IN THE PAPERS, IS THAT WE AGREE WITH THE PROBATION

15   OFFICE THAT MR. MISIEWICZ DOES NOT HAVE THE ABILITY TO PAY A

16   FINE.  I UNDERSTAND YOUR HONOR DOES NOT AGREE WITH THAT AND

17   THAT YOU HAVE THE FINAL WORD, BUT WE WOULD ASK THAT THERE BE

18   NO INTEREST IMPOSED.

19         THE COURT:  WELL, I WAS GOING TO NEXT ASK THAT.

20         IS INTEREST WAIVED IN THIS MATTER?

21         MR. PLETCHER:  NOT YET.  I THINK PART OF IT DEPENDS

22   ON THE PAYMENT PLAN.  THE IDEA OF PAYING THE MONEY BACK --

23   WELL, LET ME START OVER.  THE DEFENDANT APPEARS TO HAVE

24   SUBSTANTIAL ASSETS.  THERE HAS BEEN, HMM, EUPHEMISTICALLY,

25   CONFUSION ABOUT THE EXTENT OF THOSE ASSETS SINCE THE VERY

1   OUTSET OF THIS CASE.  THUS, MISS GERBOTH AND MR. ADAMS ARE

2   APPOINTED COUNSEL.

3           THE COURT:  WELL, WITHOUT GOING INTO IT, THERE ARE

4   POSSIBLE ISSUES THERE.  I DON'T KNOW.  THAT'S NOT FOR ME TO

5   DECIDE.  SO THIS COULD ALL BE MODIFIED, DEPENDING ON FUTURE

6   EVIDENCE.

7           GO AHEAD.

8           MR. PLETCHER:  SO WHAT MY INCLINATION TO RECOMMEND TO

9   THE COURT IS THAT WE WOULD WAIVE OR REMIT THE INTEREST AND

10  THAT THE PAYMENT PLAN BE SOMETHING THAT GETS THE CRIMINAL FINE

11  PAID OFF WITH SUBSTANTIAL ALACRITY.

12          THE COURT:  WELL, HE'S (PAUSE) --

13          MR. ADAMS:  YOUR HONOR, WE'RE NOT GOING TO KNOW

14  ANYTHING --

15          THE COURT:  NO.

16          MR. ADAMS:  -- ABOUT HIS FINANCIAL SITUATION UNTIL --

17          THE COURT:  THAT'S RIGHT.

18          MR. ADAMS:  -- SOME MONTHS HAVE PASSED AND THE

19  MILITARY HAS MADE ITS DECISIONS.

20          THE COURT:  AND THERE ARE SOME OTHER MATTERS THAT

21  NEED TO BE SETTLED.

22          MR. ADAMS:  THERE'S ANOTHER LEGAL MATTER THAT IS

23  PENDING THAT HAS TO BE RESOLVED, AND WE JUST SIMPLY DON'T

24  KNOW.  HIS REAL-ESTATE ASSETS, WHILE THEY APPEAR TO BE

25  SIGNIFICANT, ARE RELATIVELY MODEST, AND THEY WILL HOPEFULLY AT

1    ONE POINT LEAD TO A FAMILY HOME FOR SOME PART OF HIS FAMILY.

2            THE COURT:  WHAT I'M INCLINED TO DO IS TO SET MAYBE

3    250 A MONTH, 500 A MONTH.  TELL ME.  MAKE A SUGGESTION.

4            MR. ADAMS:  I WOULD SUGGEST NO MORE THAN $250 A MONTH

5    AT THIS STAGE --

6            THE COURT:  OKAY.

7            MR. ADAMS:  -- COMMENCING UPON HIS RELEASE FROM

8    CUSTODY.

9            THE COURT:  AND WHILE HE'S IN CUSTODY, I THINK I NEED

10   TO SET AN AMOUNT, TOO, DON'T I?

11           MR. TORRES:  THAT'S CORRECT, YOUR HONOR, AND THAT

12   COULD BE SIMILAR TO THE INFORMATION FOUND IN THE PSR WITH

13   REGARD TO THE RESTITUTION.

14           THE COURT:  OKAY.

15           MR. PLETCHER:  YOUR HONOR, I'M NOT SURE IN THIS CASE

16   IT'S APPROPRIATE TO WAIVE REPAYMENT DURING CUSTODY DEPENDING

17   ON WHAT HAPPENS WITH HIS MILITARY RETIREMENT.  IT COULD VERY

18   WELL BE THE CASE THAT HE'S THE RECIPIENT OF SUBSTANTIAL

19   MILITARY RETIREMENT PAYMENTS DURING THE COURSE OF HIS CUSTODY,

20   IN WHICH CASE 250 OR $500 A MONTH WOULD GO A LONG WAY WHILE HE

21   HAS NO OTHER PERSONAL EXPENSES.

22           THE COURT:  I THINK THE PROBLEM IS, MR. PLETCHER,

23   WE'RE SPECULATING SOMEWHAT AT THIS JUNCTURE.

24           MR. PLETCHER:  WE ARE.

25           THE COURT:  I DON'T KNOW THAT.  YOU MIGHT HAVE BETTER

1    INFORMATION.

2            MR. ADAMS:  YOUR HONOR, I KNOW WITH RESPECT TO SOCIAL

3    SECURITY PAYMENTS, FOR EXAMPLE, A PERSON IN CUSTODY DOES NOT

4    GET THOSE BENEFITS.  I THINK HERE IN THIS SITUATION MY

5    RESEARCH HAS REVEALED THAT, LIKELY, ANY PAYMENTS MADE WHILE

6    HE'S ACTUALLY IN CUSTODY WOULD ONLY BE PAID TO THE FAMILY.

7    THE FAMILY WOULD GET THE FAMILY BENEFIT AND HIS CHILDREN WOULD

8    BE PROVIDED FOR, BUT I DON'T THINK HE'S GOING TO HAVE, YOU

9    KNOW, SOME SUBSTANTIAL SUM OF MONEY BEING PUT ON HIS BOOKS AT

10   THE BUREAU OF PRISONS.

11           THE COURT:  SO LET'S BE CLEAR.  AT THIS TIME, THERE'S

12   NO WAIVER OF INTEREST BY THE GOVERNMENT, SO INTEREST WILL BE

13   ACCRUING ON THIS.  THE RESTITUTION IS GOING TO BE PAID AROUND

14   THE BEGINNING OF AUGUST WHEN THE SELF-SURRENDER AND THAT IS

15   RELEASED.  THE HUNDRED THOUSAND AND THE 200 SPECIAL

16   ASSESSMENT, I'LL SET A PAYMENT SCHEDULE OF 50 A MONTH WHILE

17   HE'S IN CUSTODY AND 250 WHEN HE'S OUT, OR (PAUSE) --

18           MR. PLETCHER:  FOR THE HUNDRED.  FOR THE 200, I THINK

19   IT HAS TO BE PAID FORTHWITH.

20           THE COURT:  HE CAN PAY THE 200 FORTHWITH?

21           MR. ADAMS:  YES.

22           THE COURT:  OKAY.  SO, FOR THE HUNDRED THOUSAND, 50 A

23   MONTH IN CUSTODY AND THEN 250 WHEN HE'S OUT.

24           MR. ADAMS:  WOULD INTEREST BE WAIVED DURING THE TIME

25   THAT HE IS IN CUSTODY?

1          THE COURT:  OKAY.  DO YOU WAIVE INTEREST WHILE HE'S

2    IN CUSTODY?

3          MR. PLETCHER:  THE (PAUSE) -- A LOT OF IT DEPENDS ON

4    THE, THIS ANCILLARY ISSUE OF WHETHER HE'S GOING TO HAVE

5    THOUSANDS OF DOLLARS COMING IN.

6          THE COURT:  OKAY.  WELL, LET'S DO THIS.  LET'S LEAVE

7    IT AS IT IS.  THE INTEREST IS NOT WAIVED.  BUT I WOULD ASK,

8    MR. PLETCHER, THAT YOU AND MR. ADAMS AND MISS GERBOTH SPEAK ON

9    THIS ISSUE.  IF THERE NEEDS TO BE A MODIFICATION, BRING IT TO

10   THE COURT.  I THINK WE JUST DON'T KNOW ENOUGH, AND ONCE YOU

11   CAN TELL MR. PLETCHER MAYBE A LITTLE BIT MORE CONCRETELY

12   WHAT'S LIKELY TO OCCUR WITH HIS SEPARATION FROM THE MILITARY,

13   THEN (PAUSE) --

14         MR. PLETCHER:  I THINK THAT MAKES GOOD SENSE, BECAUSE

15   I DON'T HAVE A FUNDAMENTAL OBJECTION TO WAIVING INTEREST SO

16   LONG AS IT'S DONE AS PART OF A BROADER UNDERSTANDING OF WHAT'S

17   GOING TO HAPPEN FOR REPAYMENT.

18         MR. ADAMS:  AND WILL YOUR HONOR BE SETTING A BOND

19   EXONERATION HEARING PERHAPS FOR THE FRIDAY OF THAT WEEK OF

20   AUGUST 1ST?

21         THE COURT:  YES, WE WILL.

22         MR. ADAMS:  MAYBE WE CAN TALK ABOUT THAT ISSUE IN

23   SOME DETAIL THEN AND WE MAY KNOW MORE.

24         THE COURT:  THAT WOULD BE FINE.  THAT WOULD BE FINE.

25         SO THE SELF-SURRENDER IS AUGUST 1ST, ALEX?

1           MR. ADAMS:  THAT'S A MONDAY, I BELIEVE.

2           THE DEPUTY CLERK:  BEFORE NOON.  AND THEN A STATUS

3   HEARING WILL BE SET FOR AUGUST 5TH, AT NINE O'CLOCK A.M.

4           MR. PLETCHER:  YOUR HONOR, IF THE COURT WOULD KINDLY

5   CONFIRM THE APPELLATE WAIVER, AND THEN I THINK I HAVE MOTIONS

6   ON THE REMAINING COUNTS.

7           THE COURT:  OKAY.

8           MR. ADAMS:  YOUR HONOR, HE HAS WAIVED HIS APPEAL

9   RIGHTS.

10          THE COURT:  OH, I KNOW IT.  LET ME MAKE THE LIMITED

11  INQUIRY THAT I MAKE, IF I CAN FIND IT IN HERE.

12          IT'S ON PAGE 21, MR. MISIEWICZ.  ON PAGE 21 OF YOUR

13  PLEA AGREEMENT, YOU GAVE UP YOUR RIGHT TO APPEAL OR

14  COLLATERALLY ATTACK THE JUDGMENT IN THIS CASE AND THE SENTENCE

15  THAT I JUST IMPOSED.  DO YOU UNDERSTAND THAT?

16          MR. MISIEWICZ:  I DO, YOUR HONOR.

17          THE COURT:  ONE FINAL POINT.  I WOULD LIKE AN ORDER

18  SUBMITTED FOR THE TRANSFER OF THE MONEY FROM COLORADO TO HERE.

19          MR. ADAMS:  I WILL DO THAT, YOUR HONOR.

20          THE COURT:  OKAY.

21          MR. ADAMS:  AND THEN TRANSFERRED FROM COLORADO TO

22  HERE AND THEN PAID TO THE CLERK OF THE COURT HERE.

23          THE COURT:  CORRECT.

24          MR. ADAMS:  VERY WELL.

25          THE COURT:  CORRECT.  ARE THERE ANY --

1          MR. PLETCHER:  YOUR HONOR, THE UNITED STATES MOVES AT

2    THIS TIME TO DISMISS CASE 13-CR-3782 AND TO DISMISS ANY

3    REMAINING COUNTS IN 15-CR-0033.

4          THE COURT:  OKAY.  THOSE MOTIONS TO DISMISS THAT CASE

5    AND THOSE COUNTS ARE GRANTED.

6          MR. PLETCHER:  ALEX, DOES THAT TAKE CARE OF

7    EVERYTHING ON THAT?

8          THE DEPUTY CLERK:  YES.

9          THE COURT:  ANYTHING ELSE?  LET ME ASK.  MR. ADAMS,

10   MISS GERBOTH, MR. PLETCHER, PROBATION, IS THERE ANYTHING THAT

11   THE COURT DID NOT COVER?

12         MR. ADAMS:  NOT THAT I CAN THINK OF.

13         MS. GERBOTH:  I DON'T BELIEVE SO, YOUR HONOR, NO.

14         MR. TORRES:  NOTHING IN ADDITION.

15         THE COURT:  OKAY.  THANK YOU VERY MUCH.

16         WE'LL BE IN RECESS.

17         MR. PLETCHER:  NOTHING FURTHER FROM US.

18         THE COURT:  OKAY, OKAY.  THANK YOU.

19         MR. PLETCHER:  THANK YOU.

20         THE COURT:  WE'LL BE IN RECESS.

21         (PROCEEDINGS ADJOURNED AT 11:45 A.M.)

22   -------------------------------------------------------------

23                       (END OF TRANSCRIPT)

24

25

1          I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

2   HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

3   ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

4

5          S/FRANK J. RANGUS _____

6          FRANK J. RANGUS, OCR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25